PEOPLE *v.* HUNTINGTON.

(*Supreme Court, General Term, Fifth Department.* June 28, 1888.)

1. CRIMINAL LAW—APPEAL—REVIEW—OBJECTIONS TO EVIDENCE.

Where the prosecuting witness on a trial for larceny is asked whether he mentioned his loss, and, after answering, objection is made, and the court directs the witness to state what he did, and he again states what he said, to which objection is made, and he is then asked whether he informed the family of the loss, to which, after answer, objection is made, and exception taken to the ruling that it is admissible, and no other exception is taken, and no motion to strike out is made, the general term will not reverse, though Code Crim. Proc. § 527, empowers it to grant a new trial where justice requires, whether exception shall have been taken or not.

2. LARCENY—EVIDENCE—SUFFICIENCY.

On the trial of an indictment for larceny of money from the trunk of H., it appeared that defendant and H. lodged together, and that defendant knew that the money was in the trunk in their room, and knew where the key was; that, on the day on which the money was missed, defendant went to A., to which place he was followed by H., and was accused of stealing the money, but denied the charge, and submitted to a search; that defendant then promised to return with H. to their lodgings, but failed; that afterwards H. received a letter from defendant dated at Detroit, in which the defendant denied that he took or had the money, but stated that he knew where it went to, and would pay it as fast as he could earn it; that he would say no more about it if he had to be hung for it; and that at A. he wanted to tell H. something about it, but could not. At the trial, defendant stated that he thought S. stole the money, but the evidence tended to show that S. was not in the room, and did not have access to it during the week in which it was stolen. *Held,* that the evidence was sufficient to sustain a conviction.

Appeal from court of sessions, Wyoming county.

Defendant appeals from a judgment entered upon a verdict convicting him of grand larceny.

Argued before HAIGHT, BRADLEY, and DWIGHT, JJ.

*Elmer E. Charles,* for appellant.    *E. M. Bartlett,* Dist. Atty., for the People.

HAIGHT, J.    The defendant has been convicted of the crime of grand larceny in stealing $60 in money from the trunk of George Harrman at the house of Nelson Huntington.    It appears from the evidence that Harrman and the defendant worked and slept together in a small room over the kitchen of Nelson Huntington's house; that the family consisted of Mr. Huntington, his wife, daughter, the defendant, and Harrman; that Harrman kept his money in his trunk.    The trunk was locked, and the key kept under some papers on a stand; that the defendant on several occasions saw the money, and knew where the key to the trunk was kept.    Harrman saw and counted his money in the trunk about a week before it was lost.    On the Friday night before it was missed, the defendant returned home, and slept with Harrman. On Sunday, he left, and went to Attica.    That evening Harrman discovered that his trunk had been unlocked, and that his money was missing.    The next morning he went to Attica, there found the defendant, and accused him of stealing his money.    The defendant denied it, and offered to submit to a search.    They went into a room in a hotel, and Harrman searched his clothes. The defendant then promised Harrman that he would meet him at the train, and return to Huntington's house, but did not do so; and the next that was heard of him was the receipt of a letter by Harrman, some weeks thereafter, dated at Detroit, Mich.    The letter is as follows: "FRIEND GEORGE: I thought I would write, and let you know where I was.    I am in Norris, Mich., now, and have been ever since the middle of February.    I am working for a milkman.    I have to draw the milk to the city of Detroit every day. It is just a nice drive of twelve miles, but I do not think I will stay much longer.    Well, Jack, I suppose you still charge me of stealing your money. But I will say I did not steal it.    But, George, I know where it went to, and

I will pay you the $70 which was taken from your trunk as fast as I can earn it. But I tell you again I did not have a cent of your money in my possession, and I will put my hand on the Bible and swear to what I have said; but I will not tell you another word about it if I have to be hung for it. I know it was partly my fault, but not all,—not by a good deal. I wanted to tell you something about it that day in Attica, but I could not do it; and I had a chance to go to Michigan with Sam B., and it did not cost me much, for his brother-in-law is the conductor all of the way from Buffalo to Detroit. If I ever see Shaw again, I will have a settling with him for lying to you. But, George, you can believe who you are a mind to, for all of me. If you answer this, do it right away, for I expect to leave here pretty soon. Please forgive me. Love to all. [Signed] B. J. HUNTINGTON." It must be conceded that without this letter the evidence would not have been sufficient to have warranted a conviction; and it was doubtless mainly upon its contents that the jury found their verdict of guilty. The defendant was unable satisfactorily to explain its contents. In the letter he states he knew where the money went to, and promised to pay it back. Upon the trial his explanation as to this provision was to the effect that he thought he knew who stole it; that he thought it was Shaw. Still, the evidence tends to show that Shaw was not in the room in which Harrman kept his trunk during the week before its loss; that he did not have access to the room, and could not well have taken it. He says in his letter that he wanted to tell something about it that day in Attica, but could not do it. He admits that it was partly his fault, but he would not tell another word about it if he had to hang for it. It is difficult to reconcile all of these statements upon the theory of innocence, and we are inclined to the opinion that the letter, in connection with the other circumstances disclosed by the evidence, is sufficient to sustain the verdict.

Upon the trial Harrman was sworn as a witness, and testified to the discovery of his loss on Sunday evening, and was then asked: "Did you mention it to the family?" His answer was: "Yes, sir." After the answer had been made, the defendant's counsel objected to the evidence as not being in the presence of the defendant. The court answered: ·"You may state what you did." The defendant's counsel objected to any conversation not in the presence of the defendant, and then told the witness to go on. The witness then stated: "I told the people I had lost my money." The defendant's counsel again objected on the ground that it was not in the presence of the defendant, and the court stated: "You went down-stairs?" and the witness answered: "Yes, sir:" "*By the District Attorney.* What did you do? Did you inform the family of your loss? *Answer.* Yes, sir. [Objected to by defendant's counsel.] *By the Court.* It is admissible." Exception was then taken by the defendant. It is now contended that this statement prejudiced the defendant, and that for that reason a new trial should be granted. But it will be observed that the only exception taken was to the last ruling of the court, and the former ruling of the court was virtually in favor of the defendant, and that no motion was made to strike out the answer of the witness as given. When the objection was made, the court stated to the witness that he could state what he did; that the defendant's counsel objected to conversation that was not in the presence of the defendant, and then told the witness to go on,—meaning thereby for the witness to go on and tell what he did, and not what he said. The answer made was not responsive, and, had the defendant wished to have it stricken from the record, the court should have been asked to do so. As to the question put by the district attorney as to what he did, as to whether he informed the family of his loss, this was not objected to until after the answer was taken; and the remedy was, in that case, by motion to strike out the answer. Section 527 of the Code of Criminal Procedure, which empowers the general term to grant a new trial when justice requires, whether an exception shall have been taken or not in the court below, has application to such

cases where the appellate court becomes satisfied that injustice has been done; and a new trial will not be granted for error occurring upon the trial, where the same is not raised by an exception, unless it is apparent that the prisoner has been prejudiced, and that justice demands that he be given a further hearing. There was nothing in the statement that Harrman made to the family in reference to the detail of the loss, or of the person or persons that he suspected. It was a bare statement that he had lost his money. The credibility of the witness Harrman was under consideration by the jury, and, as bearing upon the truthfulness of his story in reference to the loss of the money, his acts and conduct in the discovery of the loss were proper for the consideration of the jury. He reported the loss to the family. It was but natural and proper that he should do so. This we understand to be permissible. As to the other rulings of the court complained of, we think the court was correct.

As to the clause in the charge to the jury in reference to what "probably appeared to their satisfaction," it was objectionable; but we think it was sufficiently retracted by that which subsequently followed, and that no error was committed that renders a new trial necessary. The judgment and conviction should therefore be affirmed, and the proceedings remitted to the court of sessions of Wyoming county to proceed thereon. So ordered.

BRADLEY and DWIGHT, JJ., concurred.